UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

---

|  |  |  |
|---|---|---|
| WESTFIELD INSURANCE CO., | : | CASE NO. 1:20-cv-00234 |
|  | : |  |
| Plaintiff, | : | OPINION & ORDER |
|  | : | [Resolving Docs. 14, 16, & 18] |
| vs. | : |  |
|  | : |  |
| PIVEC MECHANICAL, LLC, et al., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

---

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Westfield Insurance Company ("Westfied") sues Defendants Pivec Mechanical, LLC, Todd Pivec, RSC Insurance Brokerage, Inc. ("RSC"), and Delmarva Surety Associates, Inc. ("Delmarva") to recover payments Westfield made under an insurance policy held by Pivec Mechanical and brokered by RSC.[1]  Defendants move to dismiss the case for lack of jurisdiction or alternatively to transfer venue.[2]  Plaintiff opposes.[3]

For the following reasons, the Court **DENIES** Defendants' motion to dismiss or transfer.

## I.  Background[4]

Defendant Pivec Mechanical, is a Maryland limited liability company with its principal place of business in Maryland.[5]  Defendant Todd Pivec, a Maryland resident, was the sole managing member of Pivec Mechanical from its formation on June 8, 2017 until

---

[1] Doc. 1.
[2] Docs. 14, 16 and 18.
[3] Doc. 29.  Defendants replied.  Docs. 28, 43, and 44.
[4] The facts provided are taken from Plaintiff's complaint.  Doc. 1.
[5] Doc. 1 at 2.

Case No. 1:20-cv-00234
Gwin, J.

his July 2, 2019 resignation.[6]

      Pivec has an extensive history of alcohol abuse, DUI convictions, and other criminal convictions.[7]  Despite this history Pivec repeatedly gained access to motor vehicles by using vehicles owned by family businesses and insured under those businesses' commercial automobile insurance policies.[8]  Todd Pivec regularly concealed his personal use of the vehicles from insurance carriers.[9]

      Plaintiff Westfield relies on independent insurance agents to gather information for underwriting decisions.[10]  Defendant Delmarva, an insurance agency incorporated in Maryland with its principal place of business in Maryland, was owned by Brian Whipple and his family.[11]  Brian Whipple and Defendant Todd Pivec grew up together and were friends.[12]  Delmarva, later purchased by Defendant RSC, acted as the insurance agent for Pivec Mechanical.[13]

## A.  The Cincinnati Insurance Policy

In July 2017, Defendant Delmarva, Whipple's insurance agency, submitted insurance applications for Defendant Pivec Mechanical.[14]  While the applications were pending, Todd Pivec was arrested for impaired driving after a vehicle owned by Pivec Mechanical and operated by Todd Pivec nearly collided with a Maryland State Police

---

[6] *Id.* at 6.
[7] *Id.* at 6-7.
[8] *Id.* at 7.
[9] *Id.* at 8.
[10] *Id.* at 4.
[11] *Id.* at 3-4, 7.
[12] *Id.* at 7.
[13] *Id.* at 8.
[14] *Id.* at 8-9.

Case No. 1:20-cv-00234
Gwin, J.

Officer's vehicle.[15]

Shortly after that arrest Cincinnati Insurance issued an insurance policy to Defendant Pivec Mechanical to insure the business until July 18, 2018.[16]  In applying for the policy, Defendant Pivec Mechanical did not list Todd Pivec as one of the drivers on that policy.[17]  One months into the policy, Cincinnati Insurance learned of Pivec's use of the company's vehicles and amended the policy to exclude coverage for any claims stemming from Todd Pivec's covered vehicle operation.[18]  In March 2018, Cincinnati Insurance declined to renew all insurance coverage for Defendant Pivec Mechanical.[19]

### B.  The Westfield Policy

While Defendant Pivec Mechanical was covered by the Cincinnati policy, Defendant RSC Insurance Brokerage, a Delaware company with its principal place of business in Massachusetts, bought insurance agency Defendant Delmarva Surety, Brian Whipple's insurance agency, including the rights to service existing and future Delmarva clients.[20]

After Cincinnati decided to non-renew Pivec Mechanical's policy, Defendant RSC sought a quote for Pivec Mechanical from Plaintiff Westfield Insurance.[21]  In the application to Westfield Insurance, Defendant RSC concealed information concerning why Cincinnati refused to continue insuring Pivec Mechanical.[22]  Despite his knowledge of

---

[15] *Id.* at 9.
[16] *Id.*
[17] *Id.*
[18] *Id.* at 10.
[19] *Id.*
[20] *Id.* at 2, 4.
[21] *Id.* at 11.
[22] *Id.*

Case No. 1:20-cv-00234
Gwin, J.

Defendant Todd Pivec's driving and criminal history, Defendant RSC did not inform Plaintiff Westfield of Pivec's criminal history or that Pivec purchased and used Pivec Mechanical's vehicles for personal use.[23] Instead, Defendant RSC represented that Defendant Todd Pivec would not be operating any insured vehicles.[24]

Based on material misrepresentations, Plaintiff Westfield insured Defendant Pivec Mechanical.[25] Although Defendant RSC repeatedly updated the list of covered drivers under the policy, Defendants RSC and Pivec Mechanical never disclosed that Defendant Todd Pivec continued to drive Pivec Mechanical's vehicles.[26]

On August 6, 2018, only 19 days into the Westfield policy, Defendant Todd Pivec totaled a BMW M5 Pivec Mechanical vehicle that Todd Pivec was driving.[27] Defendants RSC and Pivec Mechanical reported the car's loss to Westfield, but claimed that Defendant Todd Pivec's brother, Grant Pivec, had been driving at the time of the accident.[28] Westfield paid Pivec Mechanical and the lost vehicle's lien holder $115,080.45 for property damage.[29] Law enforcement later cited Todd Pivec for the crash after determining that he, not his brother, was driving the Pivec Mechanical vehicle at the time of the crash.[30]

After the accident, Defendants still intentionally omitted Todd Pivec from the Westfield policy's drivers list.[31]

On June 21, 2019, in Ocean City Maryland, Defendant Todd Pivec, under the

---

[23] *Id.*
[24] *Id.* at 11-12.
[25] *Id.* at 12.
[26] *Id.*
[27] *Id.* at 13.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 14.
[31] *Id.* at 14-15.

Case No. 1:20-cv-00234
Gwin, J.

influence of alcohol, drove a Westfield Insured Pivec Mechanical vehicle into a vehicle

driven by Sifeldawla Mohamed Alfaki.[32]  Alfaki's vehicle burst into flames, killing him.[33]

Defendants submitted claims arising from the accident to Westfield.[34]  Westfield

incurred legal defense costs, damages from settling the wrongful death claim, and

additional damages to settle property damage claims.[35]

On February 3, 2020, Plaintiff Westfield sued Defendants claiming, in short, that the

insurance policy was fraudulently obtained because Defendants knew about, but failed to

disclose, Defendant Todd Pivec's criminal history and use company vehicles.[36]

## II.    Discussion

Defendants move to dismiss the complaint for lack of personal jurisdiction or

alternatively transfer the case to the District of Maryland.[37]  The Court considers each of

these requests in turn.

### A.  Personal Jurisdiction

Plaintiff Westfield bears the burden of showing personal jurisdiction but need make

only a *prima facie* showing that it exists to avoid dismissal.[38]  The Court must view the

pleadings and affidavits in a light most favorable to Plaintiff Westfield and does not weigh

the controverting assertions from Defendants.[39]

Because the Court is sitting in diversity, it applies Ohio law to determine whether

---

[32] *Id.* at 16.
[33] *Id.* at 1.
[34] *Id.* at 16-17.
[35] *Id.*
[36] Doc. 1.
[37] Docs. 14 at 1, 16 at 1-2, and 18 at 1.
[38] *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 548-49 (6th Cir. 2016).
[39] *Id.*

Case No. 1:20-cv-00234
Gwin, J.

personal jurisdiction is proper over the non-resident Defendants.[40]  However, because "the Sixth Circuit has recognized that Ohio's long-arm statute does not extend to the constitutional limits of the Due Process Clause," the Court must separately analyze whether the Defendants are amendable to suit in Ohio and whether the Constitution's due process requirements are met.[41]

### 1.  Ohio's Long-Arm Statute

Plaintiff argues that Defendants are subject to personal jurisdiction under two separate provisions of Ohio's long-arm statute—(A)(1) and (A)(6).[42]  Ohio's long-arm statute states, in relevant part:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> (6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state.[43]

Because the Court finds that it has jurisdiction over most Defendants under (A)(6), it addresses that portion of Ohio's long arm statute first.

### a.  Jurisdiction under (A)(6)

Courts have taken a "broad approach" to the application of (A)(6) and have found that "fraudulent communications or misrepresentations directed at Ohio residents satisfy" § 2307.382(A)(6)'s requirements.[44]

---

[40] *Nationwide Life and Annuity Ins. Co. v. Golden*, No. 2:12-cv-213, 2013 WL 97718, at *4 (S.D. Ohio Jan. 7, 2013), *report and Recommendation adopted by* 2013 WL 361060 (S.D. Ohio Jan. 29, 2013).

[41] *Id.*

[42] Doc. 29 at 5.

[43] Ohio Rev. Code § 2307.382(A).

[44] *Nationwide*, 2013 WL 97718 at *5 (collecting cases).

-6-

Case No. 1:20-cv-00234
Gwin, J.

In *Nationwide*, a similar case, the Southern District of Ohio found (A)(6) satisfied where "[b]y allegedly knowingly sending false documents to Ohio in an application for life insurance, [Defendants] should have reasonably expected that the Ohio recipient would have been injured in Ohio."[45] Plaintiff Westfield's allegations are analogous to those at issue in *Nationwide* in that Westfield alleges that Defendants conspired to provide fraudulent information to Westfield in order to obtain and maintain Defendant Pivec Mechanical's insurance policy.

The Court finds that *Nationwide*'s conclusion is likewise applicable here—by allegedly misrepresenting the information provided to Plaintiff Westfield, Defendants should have expected that Westfield, an Ohio resident, would be injured in Ohio.[46] Plaintiff's allegations satisfy (A)(6) of Ohio's long arm statute.

That Pivec Mechanical and Todd Pivec submitted the insurance application through Defendant RSC does not contradict this conclusion, as the actions of a party's agent are attributable to the party for jurisdiction.[47] Furthermore, Westfield alleges that Pivec Mechanical and Todd Pivec directly reported fraudulent claims under the policy, satisfying (A)(6) through those Defendants' own actions.[48]

However, as Defendants RSC and Delmarva point out, Plaintiff Westfield alleges

---

[45] *Id.*

[46] *See also Schneider v. Hardesty*, 669 F.3d 693, 695-97, 699-701 (6th Cir. 2012) (finding (A)(6) satisfied as to non-resident attorney where attorney provided letters for non-resident client to send to investors, including Ohio resident, and letters allegedly contained misleading statements that furthered a scheme to defraud the Ohio resident); *Ashton Park Apartments, Ltd. v. Lebor*, 252 F.Supp.2d 539, 547-48 (N.D. Ohio Mar. 19, 2003) (finding jurisdiction under (A)(6) where defendant sent fraudulent communications to Ohio promising funding for a commercial project).

[47] Ohio Rev. Code § 2307.382(A) ("A court may exercise personal jurisdiction over a person who acts directly or by an agent . . ."); *Genesis Ins. Co. v. Alfi*, 425 F.Supp.2d 876, 887 (S.D. Ohio 2006) ("[W]hen analyzing whether a court has personal jurisdiction over a defendant that is consistent with due process, the actions of the defendant's agent are attributable to the actions of the defendant.").

[48] Doc. 29 at 15.

-7-

Case No. 1:20-cv-00234
Gwin, J.

that prior to applying for and obtaining the Westfield insurance contract Defendant

Delmarva was purchased by Defendant RSC.[49]  And it was RSC who served as Pivec

Mechanical's insurance agent throughout the events giving rise to Westfield's claims.[50]

Because of this, Plaintiff Westfield has not sufficiently pleaded actions on the part of

Defendant Delmarva that would give rise to jurisdiction under (A)(6) of Ohio's long arm

statute.

      The Court finds that Westfield's allegations as to Defendants Todd Pivec, Pivec

Mechanical, and RSC satisfy (A)(6) of Ohio's long arm statute.  The claims against

Defendant Delmarva do not.

### b.  Jurisdiction under (A)(1)

      Plaintiff Westfield also argues that Defendant Delmarva's relationship with Ohio

satisfies (A)(1) of Ohio's long arm statute, that allows a court to exercise jurisdiction over a

party when the claims at issue arise out of the party's transacting business in Ohio.[51]  But

here, where Westfield's claims all post-date Defendant RSC's purchase of Defendant

Delmarva, it does not appear that any actions on the party of Delmarva gave rise to this

suit, regardless of where they occurred.

      Plaintiff Westfield attempts to make much of the fact that the Whipples, Delmarva's

owners, had a relationship with Westfield from 2003 and that they attended Westfield

---

[49] Westfield alleges that "[e]ffective October 31, 2017, Defendant RSC purchased all or substantially all of the assets of Delmarva Surety, including the rights to service existing and future insurance clients of Delmarva Surety, and subsequently likewise acted as an insurance agent of behalf of Westfield." Doc. 1 at 4.  In its opposition brief, Westfield reaffirms that Defendant RSC purchased the assets of Defendant Delmarva.  Doc. 29 at 2.

[50] In its complaint and opposition brief, Westfield groups Defendants RSC and Delmarva together, referring to them as the "RSC Defendants."  But as Westfield admits in its complaint, they are not the same entity.  And when Defendant RSC bought out Defendant Delmarva, Westfield specifically alleges that RSC obtained the right to service Delmarva's former clients.  Doc. 1 at 2-4.

[51] Ohio Rev. Code § 2307.382(A).

Case No. 1:20-cv-00234
Gwin, J.

meeting and events in Ohio.[52]  But Westfield also provides documents showing that RSC

purchased "substantially all of the assets of Delmarva Surety" and that on February 8, 2018

Westfield entered into an agency agreement with Defendant RSC.[53]  Whatever contacts

Delmarva and the Whipples, had as agents for Delmarva, those contacts predate the causes

of action in this instant case.

The Court finds that Defendant Delmarva's contacts with Ohio do not satisfy (A)(1)

of Ohio's long arm statute.  As such, the Court does not have personal jurisdiction over

Defendant Delmarva.

### 2.  Due Process

Due process requires that Defendants had minimum contacts with Ohio such that

they should reasonably anticipate being haled into court in Ohio.  "The presence of such

contacts ensures that the exercise of jurisdiction over the defendant 'does not offend

traditional notions of fair play and substantial justice.'"[54]

"There are two forms of personal jurisdiction: general and specific."[55]  General

jurisdiction occurs when a defendant is essentially at home in the forum state because of

her "continuous and systematic" contacts with the states.[56]  Specific jurisdiction relies on a

connection between the forum state and the underlying activity or controversy in the state

that is subject to the state's regulation.[57]

---

[52] Doc. 29 at 2-3.

[53] Doc. 29-2 at 2-3, 17-19, 21-54.

[54] *Schneider*, 699 F.3d at 701 (internal quotation omitted) (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

[55] *Id.* (citing *Indah v. U.S. S.E.C.,* 661 F.3d 914, 920 (6th Cir.2011)).

[56] *Id.*

[57] *Id.*

Case No. 1:20-cv-00234
Gwin, J.

Plaintiff Westfield argues that Defendants' conduct satisfies the Sixth Circuit's three-part specific jurisdiction test.[58]  To find specific jurisdiction, the Court must find:

> "(1) purposeful availment 'of the privilege of acting in the forum state or causing a consequence in the forum state,' (2) a 'cause of action . . . aris[ing] from activities" in the state, and (3) a 'substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'"

On numerous occasions, the Sixth Circuit has found that the purposeful availment requirement is satisfied when a defendant directs communications that form the bases for the dispute into the forum state.[59]  In this case, Plaintiff Westfield alleges that Defendants directed fraudulent communications to Westfield in Ohio when obtaining the insurance policy, when updating the policy's driver list, and when submitting claims under the policy.[60]  This is enough to show purposeful availment.

Next, Plaintiff's cause of action must arise from Defendants' contacts with Ohio, a "lenient standard."[61]  Here, Defendants' allegedly fraudulent communications, which Plaintiff "received, read, and relied upon in Ohio," give rise to the instant dispute.[62]  The second prong is satisfied.[63]

Finally, because the first two prongs are met, "an inference of reasonableness arises" under the third prong and "only the unusual case will not meet the substantial connection

---

[58] Doc. 29 at 10-14.

[59] *Schneider*, 699 F.3d at 701-703; *Power Investments, LLC v. SL EC, LLC*, 927 F.3d 914, 919-20 (6th Cir. 2019) (finding purposeful availment where the defendant directed thousands of communications, the core of the plaintiff's fraud claims, into the forum state); *Neal v. Janssen*, 270 F.3d 328, 332 (6th Cir. 2001) ("The acts of making phone calls and sending facsimiles into the forum, standing alone, may be sufficient to confer jurisdiction on the foreign defendant where the phone calls and faxes form the bases for the action.").

[60] Doc. 29 at 11-12.

[61] *Schneider*, 699 F.3d at 703.

[62] *Id.*

[63] *See also Air Products and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 553-54 (6th Cir. 2007) (finding the second prong satisfied where the cause of action would not have arisen had the defendants not engaged in a long-term business relationship with the forum state resident and where the claim for attorneys' fees would not have arisen had the defendants not initiated the relationship via a credit application sent to the resident plaintiff).

Case No. 1:20-cv-00234
Gwin, J.

criterion."[64]  The Court must consider the Defendants' burdens, Ohio's interest as the forum state, Plaintiff's interest in relief, and other states' interests.[65]

The Court finds that this is not one of the "unusual cases" in which the inference of reasonableness does not apply.  Although litigating in Ohio might be burdensome for Defendants, "Ohio has an interest in ensuring that its residents have adequate recourse for harms inflicted by nonresidents" and litigating in Maryland would burden Plaintiff.[66]

The Court's exercise of jurisdiction over Defendants Todd Pivec, Pivec Mechanical, and RSC therefore comports with due process.

### B.  Transfer

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district to which all parties have consented."  Defendants also seek to transfer the case to the District of Maryland.  The parties do not dispute that this case could have been brought in Maryland.[67]

Courts within the Sixth Circuit consider several factors when determining whether transfer is warranted—plaintiff's forum choice, locations of evidence, convenience of parties and witnesses, forum selection clauses, prejudice to either party, and practicality, such as trying the case as inexpensively as possible.[68]  "[U]nless the balance is strongly in

---

[64] *Id.* (internal quotations and alterations omitted).

[65] *Schneider*, 699 F.3d at 703.

[66] *Id.* at 704; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors.").

[67] All Defendants say that they are Maryland residents or could have been sued in Maryland and Plaintiff does not dispute this assertion.  Docs. 14 at 1, 16 at 4, and 18 at 4.

[68] *BE&K Building Group, LLC v. Evergreen National Indemnity Company*, No. 1:20 CV 638, 2020 WL 3259251, at *2 (N.D. Ohio June 16, 2020).

-11-

Case No. 1:20-cv-00234
Gwin, J.

favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."[69]

Here, Defendants argue that transfer is proper for a number of reasons.  Defendants provide a list of potential witnesses, including RSC and Pivec employees, Pivec and Whipple family members, and witnesses related to Pivec's various traffic accidents[70]  They say that these witnesses are all in Maryland.[71]

But, not all of these witnesses appear to be key to the issues in this case, which are not whether Todd Pivec had a history of drunk driving and was involved in various accidents, but whether Defendants worked to conceal that fact from Plaintiff.  The witnesses most likely to have knowledge of the key issues are either parties to the litigation or the parties' employees and the convenience of such witnesses is not factored into the balancing considerations the Court must make.[72]  While Defendants raise concerns that non-party or party-employee Maryland witnesses may be outside this Court's subpoena powers, Plaintiff Westfield raises countervailing concerns that witnesses from Defendant Pivec Mechanical's previous insurer, Cincinnati Insurance, would be outside the Maryland's court subpoena power.[73]  So transfer for this reason would potentially only shift the burden of inconvenience from Defendants to Plaintiffs.

Relatedly, evidence related to the crux of this case, the insurance fraud, is likely held in both Maryland and Ohio, meaning this factor does not weigh in favor of transfer.

---

[69] *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009).

[70] Doc. 16-1 at 2.

[71] *Id.*

[72] *Nationwide Mut. Fire Ins. Co. v. Barbour*, No. 5:15 cv 456, 2015 WL 5560209, at *3 (N.D. Ohio Sept. 21, 2015) ("As the agents['] employer, [the party] has the power and ability to compel his appearance for deposition or trial. The convenience of such a witness is not a factor. . . ").  Likewise, Todd Pivec's incarceration would not preclude his testifying in this case.  *Barnes v. Black*, 544 F.3d 807, 809-10 (7th Cir. 2008) (noting that the writ of habeas corpus *ad testificandum* can be used in civil cases).

[73] Docs. 16 at 12, 29 at 25.

Case No. 1:20-cv-00234
Gwin, J.

Defendants also argue that Westfield, a large insurer, does business in Maryland and maintains locations there such that it would not inconvenience Westfield to try the case there.[74]  But this is not enough to overcome the deference afforded to Plaintiff's forum choice.  If it were, then the deference afforded a Plaintiff's forum choice would be effectively eviscerated as to any large insurer or corporation.

The parties dispute which state's law applies, but without deciding that issue the Court notes that Ohio has an interest here in protecting its citizens from fraud, while Maryland has an interest in regulating insurance contracts in its state.[75]  And there is no indication that the case would be resolved more efficiently in Maryland than here.  So, this factor is neutral at best.

Defendants have not met their burden of demonstrating that the Plaintiff's forum choice should be disturbed.  Therefore, the Court denies the request to transfer.

## III.    Conclusion

For the reasons stated, the Court **DENIES** Defendants' motion to dismiss as to all Defendants except Defendant Delmarva Surety Associates, Inc.  Because the Court finds that it does not have personal jurisdiction over Defendant Delmarva, the Court **GRANTS** the motion to dismiss Defendant Delmarva.  The Court **DENIES** the motion to transfer.


IT IS SO ORDERED.


Dated:  August 14, 2020                          s/        James S. Gwin
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE

---

[74] Doc. 43 at 3-4.
[75] *BE&K Building Group*, 2020 WL 3259251 at *2.

-13-